[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
The plaintiffs, Peter Cremer GmbH Co. and Agro Cereal Trading GmbH, have moved for a summary judgment against the defendant, Kaystone Chemical Inc., on their complaint and on the special defenses filed by the defendant.
The court has examined the affidavits, transcripts and supporting documents and exhibits filed by the plaintiffs. The court also notes that the defendant has filed neither evidence nor a brief in opposition to the motion.
 I.
The court concludes that the material submitted by the plaintiffs warrants that the following be found.
In the summer of 1989, the defendant entered into several contracts with each of the plaintiffs for the purchase of various quantities of refined Indonesian glycerine. All of the contracts fixed the price of the refined glycerine at sixty-four cents per pound C. F. New York. The glycerine was to be of Indonesian origin either Unilever product and/or material produced in the same factory as Unilever's product. The quality was specified as USP xx, min 99.5% glycerine concentration. The quality was to be "shipped weights and analysis final by SGS." This meant in the trade that the weight and quality analysis was to be finally ascertained by P.T. Superintending Company of Indonesia, a correspondent of Societe General de Surveillance S.A. Geneva. The various shipments under the contracts were to be paid "CAD" (cash against documents) against the first presentation of the documents.
The court finds credible evidence that the glycerine was CT Page 9686 inspected and certified as to quality, quantity and source by the SGS correspondent, and shipped "C. F. New York" in conformance with the contract. The evidence also indicates that the defendant did not pay the contract price upon presentation of the documents, but later paid as to the deliveries it accepted at a lower price, claiming a breakdown of the glycerine during shipment. In addition, the court finds that the defendant, after the plaintiff Agro Cereal Trading GmbH had loaded and shipped several cargos of contracted glycerine but before arrival in New York, refused to accept delivery of those shipments and refused to take delivery of any further shipments.
The evidence indicates that Agro Cereal Trading GmbH shipped 52,535.273 pounds (or 23.830 metric tons) of conforming glycerine on the vessel "Rainbow Bridge" on September 19, 1989 and presented the documents for payment to the defendant on September 29, 1989. The contract amount payable would have been $33,622.57. The defendant paid only $27,630.00 for this shipment, claiming the breakdown or contamination of the glycerine during shipment.
The evidence indicates that, as to the remaining 175 metric tons of glycerine which had been contracted for, Agro Cereal Trading GmbH, during September and October, 1989, loaded and shipped on three different vessels 150 metric tons of conforming glycerine before receiving a notice from its broker in early November that the defendant refused to accept any of the shipped glycerine except at the "technical" price of fifty cents per pound, since the price of glycerine in the United States had declined substantially and also refused to accept the remaining unshipped 25 metric tons in any event.
Agro Cereal Trading GmbH then resold the previously shipped 150 metric tons of the glycerin to Acme-Hardesty Co. Inc., at a price of fifty-four and two tenths cents ($0.542) per pound C.I.F. New York (which included the cost of insurance to be borne by the plaintiff as opposed to the C. F. New York contract with the defendant).
Agro Cereal Trading GmbH claims damages of $5,992.57 for the glycerine shipped on the Rainbow Bridge (being the difference between the contract price and the price paid by the defendant) together with interest. This plaintiff also has calculated damages with regard to the remaining 150 metric tons of glycerine which was resold to Acme-Hardesty Co. at $32,290.74 CT Page 9687 for the difference in contract price and the price at which the glycerine was sold, together with incidental damages of $12,509.74 for such expenses as pier demurrage, demurrage fees, broker's fees and insurance.
Argo Cereal Trading GmbH, claims, therefore, damages in the amount of $54,941.42, plus interest.
The plaintiff, Peter Cremer GmbH Co., has presented evidence that in May, 1989, it contracted with the defendant to sell the defendant 300 metric tons of Indonesian glycerine. The contract was at the same price and conditions as those of the Argo Cereal Trading GmbH contracts.
This plaintiff presented evidence that it shipped on August 26, 1989, 25 metric tons of conforming glycerine at a contract price of $35,273.25 and on September 6, 1989 it shipped 23.990 metric tons of conforming glycerine at a contract price of $33,848.21. These two shipments came to a total of $69,121.46. The defendant, on the same basis of a claim of deterioration during shipment, did not pay on the presentation of the documents but made a late payment of $57,603.02. In addition, this plaintiff has presented evidence of incidental demurrage damages totaling $2,625.00. This plaintiff's affidavit limits its claim to $13,983.44 plus interest.
Both plaintiffs make a claim for commercial interest at the rate of 11% for the period from the date the payments on the invoice were due and the date of payment (Peter Cremer GmbH 
Co. shipped 50 metric tons of conforming glycerine on July 6, 1989 at a contract price of $70,546.50 and presented the documents on August 10, 1989. The contract price was eventually paid on September 13, 1989). However, no evidence was presented that 11% per annum was the commercial interest rate and, except for the parenthetical information, no specific claim for the period of this interest was presented.
The court finds that there is no genuine issue of material fact between the parties.
 II.
There is no legal impediment to granting a summary judgment on the basis of any claim made by the defendant. In addition to the fact that no brief was filed in opposition to the legal CT Page 9688 claims of the plaintiffs, the court finds the plaintiffs' claims are valid.
Since the contract called for inspection by a third party to be final, that condition controls. The evidence, by way of deposition of a principal in the defendant corporation indicates that no exception was taken by the defendant to the certificate of quality inspection by the third party until after the glycerine had arrived at the United States terminals.
As counsel for the plaintiffs has pointed out, a C.I.F (cost of goods, insurance and freight) or C.F. (cost and freight) contract is one in which "the seller fulfills his obligation simply by loading the cargo and forwarding to the buyer a bill of lading . . ." National American Corp. v. Federal Rep. of Nigeria, 597 F.2d 314, 321 (2nd Cir, 1979). See also the Connecticut Uniform Commercial Code provision, C.G.S. Sec.42a-2-320 (2). Comment 1 to that section reads:
 1. The C.I.F contract is not a destination but a shipment contract with risk of subsequent loss of goods passing to the buyer upon shipment if the seller has properly performed all his obligations with respect to the goods. Delivery to the carrier is delivery to the buyer for purposes of risk and `title.' Delivery of possession of the goods is accomplished by delivery of the bill of lading, and upon tender of the required documents the buyer must pay the agreed price without awaiting the arrival of the goods and if they have been lost or damaged after proper shipment he must seek his remedy against the carrier or insurer. The buyer has no right of inspection prior to the payment or acceptance of the documents.
The buyer assumes the title and risk of loss upon delivery of the goods to the carrier and must make payment upon tender of the documents and cannot demand delivery of the goods in substitution for the documents. C.G.S. 42a-2-320 (4). While an agreement involving any warranty of quality or condition of the goods on arrival might place upon the seller the risk of deterioration, C.G.S. Sec. 42a-2-321 (2), here the contract called for final inspection in Indonesia by the SGS correspondent. As the plaintiffs' attorney notes, once conforming goods are delivered to the carrier, "[d]elivery and CT Page 9689 possession of conforming goods then becomes a matter between the buyer and the carrier and/or insurer of the goods, [and] the seller's involvement in the transaction is at an end." Steuber Co., Inc. v. Hercules, Inc., 646 F.2d 1093, 1097 (5th Cir. 1981).
The defendant had filed two special defenses, one that the plaintiffs failed to mitigate damages; the second, that there was an accord and satisfaction. The defendant has supplied no documentation or other evidence to support these defenses. Moreover, the evidence indicates that the plaintiff, Agro Cereal Trading GmbH, did resell at a price of fifty cents per pound and there was evidence that this was a reasonable market value.
The defendant presented no evidence of an accord between itself and the respective plaintiffs and acceptance of partial payment does not by itself indicate any new agreement.
 III.
Therefore, the motion for summary judgment on the complaint in favor of the plaintiffs against the defendant and on the special defenses in favor of the plaintiff and against the defendant may enter.
The plaintiff, Agro Cereal Trading GmbH, has established damages in the amount of $54,941.42, plus interest. The plaintiff Peter Cremer GmbH Co. has established damages in the amount of $13,983.44 plus interest.
Judgment may enter in favor of the plaintiff, Agro Cereal Trading GmbH, for damages in the amount of $54,941.42, plus interest.
Judgment may enter in favor of the plaintiff Peter Cremer GmbH Co. for damages in the amount of $13,983.44 plus interest.
NIGRO, J.